UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BOAZ ODUMA OMONDI OWUOR, *et al.*,

      Petitioners,

v.                                                                                          19-CV-872-LJV-JJM
                                                                                            DECISION & ORDER
MERRICK GARLAND,[1] *et al.*,

      Respondents.
_____

      On June 30, 2019, the petitioners, Boaz Oduma Omondi Owuor and Poe Mu Htu Blat, submitted a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a complaint seeking declaratory and injunctive relief.  Docket Item 1.  They asked this Court to enjoin the respondents from removing Owuor from the United States, moving him outside the State of New York without 72-hours' notice, and detaining him for immigration purposes.  *Id.* at 20-21.  On July 2, 2019, the petitioners moved for a temporary restraining order ("TRO") and preliminary injunction seeking the same relief.  Docket Item 3.  The following day, this Court heard oral argument, *see* Docket Item 9, and issued a limited TRO "so that [the Court] c[ould] decide whether [it] ha[d] jurisdiction" over the petitioners' claims, Docket Item 37 at 8.

      Following motion practice and extensive briefing, on October 24, 2019, the parties notified the Court that Owuor had been released from the custody of the United States Department of Homeland Security under an order of supervision, Docket Item

---

[1] The caption has been updated under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall substitute Merrick Garland for William Barr on the docket.

33, and this Court held the matter in abeyance, Docket Items 34, 36, 40, 42, 45.  Then, by stipulation approved and ordered on February 7, 2020, the petitioners dismissed all claims against the respondents, and the respondents agreed to notify the petitioners' counsel "immediately if [] Owuor is re-detained for civil immigration purposes or if modifications to the terms of [] Owuor's [order of supervision] become necessary."  Docket Item 47 at 2; Docket Item 48.

On March 13, 2020, the petitioners moved for attorney fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  Docket Item 52.  On April 17, 2020, the respondents opposed the motion, Docket Item 54; on May 5, 2020, the petitioners replied, Docket Item 55; and on May 11, 2020, the respondents moved for leave to sur-reply, Docket Item 56.

This Court then referred the matter to United States Magistrate Judge Jeremiah J. McCarthy.  Docket Item 57.  On March 30, 2021, Judge McCarthy issued a Report, Recommendation, and Order ("RR&O") granting the respondents' motion for leave to file a sur-reply and recommending that the petitioners' motion for EAJA fees should be denied.  Docket Item 58.  Judge McCarthy specifically found that the petitioners were not "prevailing parties" within the meaning of the EAJA and that, in any event, the respondents' position was "substantially justified."  *Id.* at 3-6.

On April 13, 2021, the petitioners objected to the recommendation that the motion for EAJA fees be denied,[2] Docket Item 59; on April 16, 2021, the respondents

---

[2] The petitioners did not object to Judge McCarthy's decision to grant the respondents' motion for leave to file a sur-reply.  See Docket Item 59.

responded, Docket Item 61, and on May 18, 2021, the petitioners replied, Docket Item 62.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the RR&O; the record in this case; and the objection, response, and reply. Based on that *de novo* review, the Court accepts and adopts Judge McCarthy's recommendation to deny the motion for EAJA fees.[3]

The petitioners object to the RR&O's reliance on *Mastrio v. Sebelius*, 768 F.3d 116 (2d Cir. 2014), for the proposition that the petitioners are not the prevailing party because the respondents "voluntarily" released Owuor from custody. *See* Docket Item 59 at 3. The petitioners say that "[u]nlike the [p]laintiff in *Mastrio*, [] Owuor was detained and facing removal from the United States, an inability to proceed with the lawful process permitted by the government to adjust his status[,] and had a final Order of Removal. In *Mastrio,* the [p]laintiff already had the benefits he sought to recover in litigation." *Id.* In contrast here, they argue, "[a]s the result of the litigation that challenged the legality of the government's actions, Owuor was released from detention, permitted to proceed with the process to lawfully adjust his status[,] and there was a joint application to reopen his immigration removal proceedings." *Id.* at 4.

---

[3] The Court assumes the reader's familiarity with the facts alleged in the petition, *see* Docket Item 1, and Judge McCarthy's analysis in the RR&O, *see* Docket Item 58.

3

In *Mastrio*, the Second Circuit addressed whether interim injunctive relief could confer prevailing-party status. The court said that:

> [a] plaintiff receiving interim injunctive relief may be a prevailing party where she prevailed on the merits at the interim stage. But where the relief does not result from a determination on the merits[, a] plaintiff does not prevail. Making this determination requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief. With respect to TROs, we have stated that the standard for granting such relief requires a finding of immediate and irreparable injury but not a specific determination as to the merits. Thus, the procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status.

*Mastrio*, 768 F.3d at 120 (internal marks, alternations, and citations omitted). The Second Circuit also clarified that "[p]reserving the status quo is not confined to ordering the parties to do nothing: it may require parties to . . . act or to refrain from acting[,]" including requiring parties "to alter the positions they had taken that led to the controversies before the court." *Id.* at 120-121 (citations omitted).

The Second Circuit's words and analysis are dispositive here. The TRO did not make the petitioners prevailing parties because this Court never reached the merits of the petitioners' claims; on the contrary, this Court issued a limited TRO only to preserve the status quo. In fact, this Court made it clear that it was *not* reaching the merits and granted the TRO only because it did not "want the status quo to change . . . while [it] look[ed] into the question of whether i[t] ha[d] jurisdiction." Docket Item 37 at 7. And this Court never even decided that it had jurisdiction over the petitioners' claims. The TRO therefore did not confer prevailing-party status on the petitioners. *See Mastrio*, 768 F.3d at 120; *see also Haley v. Pataki*, 106 F.3d 483 (2d. Cir. 1997) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's

4

fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits.").

Moreover, although Owuor ultimately was released from custody and permitted to challenge his removal, it was not because of anything that this Court did.  Instead, the respondents voluntarily agreed to the relief that the petitioners sought.  The petitioners may well be correct that the litigation, not the respondents' magnanimity, brought about that outcome.  But the Second Circuit has precluded prevailing-party status on that basis as well.  *See Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (finding that a party who achieved the desired result because his lawsuit brought about a voluntary change in the defendant's conduct was not a prevailing party under the EAJA).

The petitioners argue that the notice provision in the stipulation of dismissal materially changed their relationship with the respondents, Docket Item 59 at 4, suggesting that the Court made them prevailing parties by "so ordering" the stipulation. Judge McCarthy rejected this argument because "[t]he stipulation does not prevent [the] respondents from re-detaining Owuor or require any action in advance of doing so—it merely requires notification after the fact." Docket Item 58 at 5.  This Court agrees.

Finally, "[t]he determination of whether [the petitioners] ha[ve] 'prevailed' turns on the accurate characterization of the claim upon which [they] sought to prevail." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005).  Here, the petitioners sought to prevail on the government's removal of Owuor: they requested a court order enjoining Owuor's removal, his transfer from New York without 72-hours' notice, and his future immigration detention.  *See* Docket Items 1, 3.  The stipulation might require notice to the petitioners' counsel if the government re-detains (and then perhaps moves) Owuor, but

5

it does not prevent the government from re-detaining Owuor, moving him, or even removing him from the United States.  So even if the notice provision in the stipulation was "contested" and a "central issue" as the petitioners argue, it still does not confer prevailing-party status on them.  See Docket Item 59 at 4.

    Because the petitioners are not prevailing parties, they are not entitled to EAJA fees.  For the reasons stated above and in the RR&O, the motion for EAJA fees, Docket Item 52, is DENIED.  The Clerk of the Court shall close the file.

    SO ORDERED.


Dated:    May 24, 2021
           Buffalo, New York


                                                /s/ Lawrence J. Vilardo
                                                LAWRENCE J. VILARDO
                                                UNITED STATES DISTRICT JUDGE